1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10
11
12
13
14
15
16

RAFAEL GONZALEZ,

                    Plaintiff,

          v.

CITY OF FEDERAL WAY, et al.,

                    Defendants.

CASE NO. C06-502JLR

ORDER

17

## I.  INTRODUCTION

18
19
20
21
22
23
24
25
26
27
28

This matter comes before the court on Defendants' motion for summary judgment (Dkt. # 18), Plaintiff's motion for a continuance to conduct additional discovery (Dkt. # 22), and Defendants' motion to stay discovery pending the court's ruling on qualified immunity (Dkt. # 25).  The court has reviewed the parties' briefing and accompanying declarations and exhibits.  The court finds this case appropriate for decision without oral argument.  For the reasons stated below, the court GRANTS Defendants' motion for summary judgment on Mr. Gonzalez's federal claims, and declines to exercise jurisdiction on his pendent state law claims.  The court also DENIES Mr. Gonzalez's motion for continuance and DENIES as moot Defendants' motion to stay.

ORDER – 1

## II.  BACKGROUND

Plaintiff Rafael Gonzalez brought this action against the City of Federal Way and Officer S.M. Swanson for alleged constitutional violations arising out of his arrest for soliciting a prostitute.  On November 12, 2005, at approximately 11:15 p.m., Officer Swanson, a Federal Way Police Officer, stopped the vehicle in which Mr. Gonzalez, and his female passenger, were traveling.  Gonzalez Decl. at 1.  Mr. Gonzalez was the driver of the vehicle.  According to Mr. Gonzalez, the female passenger was a woman named "Summer" whom he had met earlier that evening when she was hitchhiking in the rain and cold; Summer was later identified as Summer Fleming.  Id.; Dani Decl., Ex. B (Gonzalez Dep.) at 30.  Mr. Gonzalez testified that after he met Ms. Fleming, they discussed going out to dinner, and getting a room for the evening.  Gonzalez Dep. at 32.  According to Mr. Gonzalez, it was pouring rain that night and he was concerned about driving under those conditions, so he and Ms. Fleming turned where he saw "a motel on." Id. at 33.  After turning, Mr. Gonzalez noticed red and white flashing lights.  Id.  Mr. Gonzalez then pulled to the right side of the road, and awaited the officer's approach.  Id.

Prior to Officer Swanson's arrival at Mr. Gonzalez's vehicle, Mr. Gonzalez and Ms. Fleming discussed whether she should put her seatbelt back on after having taken it off when the vehicle came to a stop.  Gonzalez Dep. at 34.  Mr. Gonzalez warned Ms. Fleming that the police officer would write her a ticket if she did not have her seatbelt on when he approached the vehicle.  Id.  Ms. Fleming tried to put it back on, but Officer Swanson arrived at the driver-side window, and shined a light into the vehicle, before she could put her seatbelt on.  Id.  Mr. Gonzalez rolled his window down, and asked Officer Swanson what the problem was.  Id.  Officer Swanson informed Mr. Gonzalez that he

ORDER – 2

had pulled him over because his vehicle had a broken taillight lens.[1]  Gonzalez Decl. at 1.
Officer Swanson asked Mr. Gonzalez whether he was aware of the out taillight, to which
Mr. Gonzalez responded that he was not.  Gonzalez Dep. at 34.  Mr. Gonzalez also
explained that he had been checking out different clubs in the area, and he surmised that
someone had backed into him in the parking lot at one of these clubs and broke his
taillight.  Id. at 34-35.  Officer Swanson then asked for Mr. Gonzalez's driver's license,
registration, and proof of insurance.  Id. at 35.  Mr. Gonzalez complied with the request.
Id.  Officer Swanson also requested identification from Ms. Fleming.  Id.  Ms. Fleming
did not have identification, but provided her name to Officer Swanson.  Id.

   According to Mr. Gonzalez, Officer Swanson then returned to his patrol car to
check for "wants and warrants" and to confirm that the car was registered to Mr.
Gonzalez.  Id.  Upon clearing Mr. Gonzalez with respect to these issues, Officer Swanson
returned to the vehicle and issued Ms. Fleming a citation for not wearing her seatbelt.
Gonzalez Decl. at 1.  Officer Swanson then told Mr. Gonzalez that he fit the profile of a
narcotic trafficker, and asked him if he could search the vehicle.  Id. at 2.  Mr. Gonzalez
told Officer Swanson that "he could not have [his] permission but [Officer Swanson]
could write [him] a ticket for a taillight or give [him] a warning."  Id.  It appears from Mr.
Gonzalez's account of the incident, that Officer Swanson was upset over Mr. Gonzalez's
denial of permission to search.  According to Mr. Gonzalez, Officer Swanson responded,
"[y]ou don't tell me what to do, you want to play some games I am going to show you
some games."  Id.  Officer Swanson then ordered Ms. Fleming from the vehicle and told

---

[1]Mr. Gonzalez does not dispute that the taillight on his vehicle was broken when he was
stopped by Officer Swanson.  Dani Decl., Ex. A (Pl's responses to Defs' First Request for
Admission).

ORDER – 3

her she was under arrest.  <u>Id.</u>  Officer Swanson handcuffed Ms. Fleming and placed her in the back of his patrol car.  <u>Id.</u>  Officer Swanson then told Mr. Gonzalez not to move.  <u>Id.</u>

After placing Ms. Fleming in his patrol car, Officer Swanson returned to Mr. Gonzalez and told him that he would get "one of them to break and it may as well be" Mr. Gonzalez.  <u>Id.</u>  Mr. Gonzalez concluded that Officer Swanson was trying to get him to admit that he had solicited Ms. Fleming for sex.  <u>Id.</u>  Officer Swanson said that he was going to make a deal with them and that either Ms. Fleming or Mr. Gonzalez was going to get a citation for solicitation and the other was going to go to jail.  <u>Id.</u>  Officer Swanson also told Mr. Gonzalez that Ms. Fleming had been carrying a "big knife," and that Mr. Gonzalez should be thanking him for getting her out of his vehicle.  <u>Id.</u>  After going back and forth between Mr. Gonzalez's vehicle and his patrol car a few more times, Officer Swanson placed Mr. Gonzalez under arrest because Ms. Fleming agreed to sign a statement admitting that Mr. Gonzalez had picked her up to have sex in exchange for money.  <u>Id.</u>; <u>see also</u> Swanson Decl., Ex. A (Fleming witness statement).  For this reason, Officer Swanson placed Mr. Gonzalez under arrest.

After arresting Mr. Gonzalez, Officer Swanson and another officer searched his car.  Gonzalez Decl. at 2.  Mr. Gonzalez claims that the officers left the trunk and car doors open allowing the rain to get into his vehicle and damage the interior of it.  <u>Id.</u> Officer Swanson thereafter impounded Mr. Gonzalez's vehicle.

In April 2006, Mr. Gonzalez filed suit against Officer Swanson and the City of Federal Way alleging violations of his Fourth and Fourteenth Amendment rights, as well as state law claims for false imprisonment/false arrest and breach of bailment.  For the reasons stated below, the court grants Defendants' motion for summary judgment as to Mr. Gonzalez's claims for violation of the Fourth and Fourteenth Amendments and declines to exercise jurisdiction over Mr. Gonzalez's state-law claims.

ORDER – 4

1

### III.  ANALYSIS

2

3        In examining a summary judgment motion, the court must draw all inferences from

4    the admissible evidence in the light most favorable to the non-moving party.  <u>Addisu v.</u>

5    <u>Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is proper

6    where there is no genuine issue of material fact and the moving party is entitled to

7    judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial

8    burden to demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp. v.</u>

9    <u>Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the

10   opposing party must show that there is a genuine issue of fact for trial.  <u>Matsushita Elect.</u>

11   <u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).  The opposing party must

12   present significant and probative evidence to support its claim or defense.  <u>Intel Corp. v.</u>

13   <u>Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1558 (9th Cir. 1991).

14   **A.      Constitutional Claims**

15       Mr. Gonzalez asserts that Officer Swanson and the City of Federal Way violated

16   both his Fourth and Fourteenth Amendment rights, and therefore must bring his claims

17   pursuant to 42 U.S.C. § 1983.[2]  Officer Swanson argues that he is entitled to qualified

18   immunity on both claims because Mr. Gonzalez cannot show a violation of any federally

19   protected right.  The City similarly claims that its liability pursuant to <u>Monell v. Dept. of</u>

20   <u>Social Serv.</u>, is dependent on a finding that Officer Swanson violated Mr. Gonzalez's

21   constitutional rights – a prerequisite to municipal liability.  436 U.S. 658 (1978).

22   Because Officer Swanson did not violate Mr. Gonzalez's rights, the City argues it should

23   likewise be dismissed from this lawsuit.

24

25

26

27   _____

28        [2]The court interprets Mr. Gonzalez's Complaint as asserting his constitutional claims
     under section 1983, despite his failure to plead it.

ORDER – 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Section 1983³ provides a remedy to citizens deprived of the protections of the United States Constitution or other laws by individuals acting "under color of law." S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 887 (9th Cir. 2003).  Qualified immunity is a defense to liability under section 1983 that applies, in general, when the accused official reasonably believed his conduct to be lawful.  See generally, Harlow v. Fitzgerald, 457 U.S. 800, 813-19 (1982).  In analyzing the applicability of qualified immunity, the plaintiff has the burden of showing a violation of a clearly established federal right.  Sweany v. Ada County, 119 F.3d 1385, 1388 (9th Cir. 1987).

Qualified immunity is available to a defendant when a reasonable person in the defendant's shoes could have mistakenly believed that the law did not prohibit his conduct.  Saucier v. Katz, 533 U.S. 194, 205 (2001).  In Saucier, the United States Supreme Court established a two-prong approach to determining whether qualified immunity applies.  First, the court determines if the evidence taken in the light most favorable to the plaintiff shows that a constitutional violation occurred.  Id. at 201.  If no violation occurred, the officer is entitled to qualified immunity and the court's inquiry is over.  Id.  If, however, the court determines that the conduct violated a constitutional right, the court must turn to the second step of the analysis, which focuses on whether the law underlying the constitutional violation was "clearly established."  Id.  The court now applies this two-step analysis for qualified immunity to each of Mr. Gonzalez's alleged constitutional violations.

---

³Section 1983 provides, in relevant part: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.

ORDER – 6

1
2

### i.   Officer Swanson Did Not Violate Mr. Gonzalez's Fourth Amendment Rights

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Mr. Gonzalez claims that Officer Swanson's traffic stop and arrest of him on November 12, 2005, violated his Fourth Amendment right against unreasonable searches and seizures.[4]  A traffic stop constitutes a "seizure," and therefore the court applies the Fourth Amendment's "reasonableness" standard in evaluating its duration and scope. Whren v. United States, 517 U.S. 806, 810 (1996).  Reasonableness depends on "a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers."  Maryland v. Wilson, 519 U.S. 408, 411 (1997) (internal quotation and citation omitted).  It is well-settled that an officer may restrict a driver's movement "pending completion of the stop" without violating the Fourth Amendment.  Id. at 410 (holding that an officer's order for the driver to exit his vehicle during a traffic stop was not an unlawful seizure) (emphasis added); United States v. Williams, 419 F.3d 1029, 1033 (9th Cir. 2005) (same as to order to remain in the car). At some point in time, however, an officer's lawful exercise of authority ends and the temporary stop becomes an unlawful seizure.  See Illinois v. Caballes, 543 U.S. 405, 407 (2005).  Thus, an officer who prolongs a seizure beyond the time necessary to "complete the mission" violates the Fourth Amendment.  Id.; cf United States v. Chavez-Valenzuela, 268 F.3d 719 (9th Cir. 2001) (holding that the scope of an investigative detention must be "carefully tailored" and may last no longer than necessary to effectuate the purpose of the stop).

24

25

26

Here, Officer Swanson stopped Mr. Gonzalez because he was driving with a broken taillight, in violation of Washington State law.  See RCW § 46.37.050(1).  Mr.

27

28

---

[4]The Fourth Amendment applies to the States by way of the Fourteenth Amendment. See Mapp v. Ohio, 367 U.S. 643, 655 (1961).

ORDER – 7

Gonzalez does not dispute this fact.  Dani Decl., Ex. A (Pl's responses to Defs' First Request for Admission).  At some point during the stop, however, there was a shift in its purpose from a lawful traffic stop into Officer Swanson's investigation into solicitation.  As stated above, however, the shift to an investigatory stop does not require separate reasonable articulable suspicion, so long as it does not unreasonably prolong the stop.  See United States v. Mendez, 476 F.3d 1077, 1080 (9th Cir. 2007) (citing Illinois v. Caballes, 543 U.S. 405, 408 (2005)).[5]  According to Mr. Gonzalez, Officer Swanson stopped his vehicle at approximately 11:15 p.m.  By 11:30 p.m., Officer Swanson had obtained a written witness statement from Ms. Fleming setting forth the probable cause for Mr. Gonzalez's arrest for soliciting a prostitute.  Accordingly, the record reflects that the traffic stop took approximately 15 minutes.  During this time, Officer Swanson wrote a citation to Ms. Fleming and preceded to effectuate her arrest shortly thereafter, as well as check Mr. Gonzalez for warrants, valid insurance, and proper registration.  The investigation into possible solicitation did not unreasonably prolong the stop; Officer Swanson therefore did not unlawfully seize or detain Mr. Gonzalez in violation of the Fourth Amendment.  Accordingly, the court finds that the qualified immunity defense applies with respect to Mr. Gonzalez's Fourth Amendment claim, such that Officer Swanson is entitled to summary judgment on this issue.

Mr. Gonzalez argues in his response to Defendants' motion for summary judgment that Officer Swanson's conduct, after Mr. Gonzalez questioned the officer's authority to search his vehicle, was retaliatory and violated Mr. Gonzalez's First Amendment rights. Mr. Gonzalez does not, however, assert a claim against either Defendant based on a

---

[5]Although the Ninth Circuit decided Mendez in 2007 – after Mr. Gonzalez's encounter with Officer Swanson – the Mendez decision follows the United States Supreme Court's decision in Caballes, which was decided prior to this incident.  See United States v. Mendez, 476 F.3d 1077, 1080 (9th Cir. 2007) (citing Illinois v. Caballes, 543 U.S. 405, 408 (2005))

ORDER – 8

violation of his First Amendment rights.  It is true that the law establishes that the First

Amendment protects the right to verbally challenge the police.  See Mackinney v.

Nielsen, 69 F.3d 1002, 1007 (9th Cir. 1995); see also Duran v. City of Douglas, 904 F.2d

1372, 1378 (9th Cir. 1990) (reversing summary judgment because trier of fact could

conclude that officer stopped plaintiff in retaliation for obscene gestures, which would

constitute a separate section 1983 claim for a First Amendment violation).  While the

record may support a section 1983 claim based on Mr. Gonzalez's First Amendment

rights, the court cannot address such a claim if it is not plead in the Complaint.

Officer Swanson's interaction with Ms. Fleming, on the other hand, is

problematic, and counsel for Mr. Gonzalez devotes much argument to this issue.  The

account given by Mr. Gonzalez is that after issuing Ms. Fleming a citation for violating

the seat belt law, he then told her she was "under arrest."  There is no information in the

record that evinces Officer Swanson's probable cause for Ms. Fleming's arrest, and the

court questions whether such probable cause existed.  Even though the court finds Officer

Swanson's conduct in relation to Ms. Fleming somewhat troubling, however, Ms.

Fleming is not a plaintiff in this case and the law does not permit Mr. Gonzalez to assert a

Fourth Amendment violation on her behalf.  See Rakas v. Illinois, 439 U.S. 128, 134

(1978) ("Fourth Amendment rights are personal rights which, like some other

constitutional rights, may not be vicariously asserted.") (citations and quotations

omitted); see also United States v. Pulliam, 405 F.3d 782, (9th Cir. 2005).

Because the court finds that Mr. Gonzalez's constitutional rights prohibiting

unreasonable seizure were not violated, the qualified immunity inquiry ends.  See Jackson

v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2002) ("If no constitutional right was

violated, the court need not inquire further.").  This also includes claims against the City

for alleged violations of Mr. Gonzalez's Fourth Amendment rights based on Monell

ORDER – 9

liability.  See Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994) (holding that municipal defendants cannot be held liable where no constitutional violation occurred) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)).

ii.    **Fourteenth Amendment Violation**

Mr. Gonzalez also claims that Officer Swanson violated his right to "remain in a public place of his choice and the right to move from one place to another."  Compl. at ¶ 13.  While the court questions whether the right to move freely about or from one place to another is even a recognized liberty interest, and one that can give rise to a substantive due process violation,[6] the law has long-recognized the right of the state to temporarily detain individuals to effectuate lawful investigations.  The court, having concluded that Officer Swanson did not violate Mr. Gonzalez's Fourth Amendment rights, further holds that his detention of Mr. Gonzalez did not violate his right to move freely about. Accordingly, the court dismisses Mr. Gonzalez's claim based on a violation of his substantive due process right to move freely about.

**B.    56(f) Motion**

The court notes that Mr. Gonzalez requests that summary judgment on qualified immunity be postponed until he has been given the opportunity to conduct discovery. Qualified immunity is not merely a shield from damages, however, it provides "an entitlement not to stand trial or face the other burdens of litigation."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (citing Harlow v. Fitzgerald, 457 U.S. 800, 813-19 (1982)). The Court in Mitchell noted that unless a "plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."  Id.  Similarly, in Harlow, the Court

---

[6]  See e.g., Lutz v. City of York, 899 F.2d 255, 268-69 (3d Cir. 1990) (explaining boundaries of the substantive due process right to travel).

ORDER – 10

1   stated that trial courts should not permit discovery against a defendant claiming qualified

2   immunity until the resolution of the "threshold [qualified] immunity question."  457 U.S.

3   at 815.  Because the court finds that, taking all of Mr. Gonzalez's allegations as true,

4   Officer Swanson did not violate a clearly established law when he stopped and detained

5   Mr. Gonzalez, discovery is not required in this case.  The court therefore denies the

6

7   motion.

8   **C.   State Law Claims**

9        Mr. Gonzalez asserts two Washington State law claims: false arrest/imprisonment

10  and bailment.  Under 28 U.S.C. § 1367, a federal court may assume supplemental

11  jurisdiction over all other claims "that are so related to claims in the action within the

12  original jurisdiction so that they form part of the same case or controversy."  Section

13  1367 further provides, however, that where the district court "has dismissed all claims

14  over which it has original jurisdiction," it may decline to exercise supplemental

15  jurisdiction over the state law claims.  Id. at 1367(c)(3).  In this order, the court dismisses

16  all of Mr. Gonzalez's federal claims, leaving only his state law claims for adjudication.

17

18  Based on section 1367(c)(3), the court declines to exercise its jurisdiction over the state

19  law claims.

20                          **IV.  CONCLUSION**

21       For the above reasons, the court GRANTS Defendants' motion for summary

22  judgment on Mr. Gonzalez's federal claims, and declines to exercise jurisdiction on his

23

24  pendent state law claims (Dkt. # 18).  The court also DENIES Mr. Gonzalez's motion for

25  continuance (Dkt. # 22) and DENIES as moot Defendants' motion to stay (Dkt. # 25).

26

27

28

ORDER – 11

1    The court directs the clerk to enter judgment consistent with this order.

2    Dated this 8th day of June, 2007.

3

4

5    _____

6    JAMES L. ROBART
     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER – 12